**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KEILA SEVERINO, KHADY GUEYE, and
DELSA JIMENEZ individually and on behalf of
all other similarly situated persons,**

                    **Plaintiffs,**

      **v.**

**AVONDALE CARE GROUP, LLC**

               **Defendant.**

**Case No. 1:21-cv-10720-LGS-SDA**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 3

I.      INITIATING THE PROCEEDING ............................................................................. 3

II.     PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND
        DEFENDANT'S OPPOSITION ................................................................................... 3

III.    UNSUCCESSFUL MEDIATION AND DEFENDANT'S ATTEMPT TO STAY THE
        PROCEEDING............................................................................................................. 3

IV.     OVERVIEW OF DISCOVERY................................................................................... 4

V.      THE SETTLEMENT PROCESS ................................................................................. 5

VI.     MOTION FOR PRELIMINARY APPROVAL............................................................ 6

SUMMARY OF SETTLEMENT TERMS .............................................................................. 6

ARGUMENT ........................................................................................................................... 9

I.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS WARRANTED ........ 9

        A.      Numerosity is Satisfied ................................................................................... 10

        B.      Commonality is Satisfied................................................................................. 10

        C.      Typicality is Satisfied ...................................................................................... 11

        D.      Adequacy is Satisfied ...................................................................................... 11

        E.      Predominance is Satisfied................................................................................ 12

        F.      Superiority is Satisfied..................................................................................... 13

II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...... 13

        A.      The Settlement Satisfies Procedural Fairness ................................................... 14

                1.      The Settlement Was Negotiated at Arm's Length ............................... 14

2.   Plaintiffs and Class Counsel Have Provided Excellent Representation to the Class ..................................................................................................................... 15

3.   The Notice and Claims Process Satisfied Rule 23(c) and Due Process .............. 15

4.   The Settlement is Substantively Fair.................................................................... 16

     a.   *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation ................................................................................................ 17

     b.   *Grinnell* Factor 2: Reaction of the Class .......................................... 17

     c.   *Grinnell* Factor 3: Stage of the Proceedings.................................... 18

     d.   *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages ............................................................................................. 18

     e.   *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the Trial ................................................................................................... 20

     f.   *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment ........................................................................................... 20

     g.   *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation ................................................................ 21

5.   The Relief Provided to the Class is Adequate..................................................... 21

A.   The Settlement Agreement Treats Class Members Equitably to One Another.... 21

III.   THE RELEASE OF FLSA CLAIMS SHOULD BE APPROVED AS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE ................................... 22

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................... 14

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 9, 13

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................................ 18

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 18, 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ............................................................................................ 12

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ............................................................................................ 13

*D'Angelo v. Hunter Bus. Sch., Inc.*,
  21 Civ. 03334 (JMW), 2023 WL 4838156 (E.D.N.Y. July 28, 2023) ................................. 18

*Detroit v. Grinnell Corp.*,
  495 F.2d (2d Cir. 1974) ........................................................................................*passim*

*Dorn v. Eddington Sec., Inc.*,
  8 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ..................................... 11, 12, 13

*Flores v. CGI Inc.*,
  22 Civ. 350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ...................... 14, 17, 22

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ........................................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................... 10, 14, 15

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ..................................................................................... 12

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................................... 12

*Mendez v. MCSS Rest. Corp.*,
  16 Civ. 2746 (RLM), 2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) ................................. 18

*Soler v. Fresh Direct, LLC*,
   20 Civ. 3431 (AT), 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ................................................. 10, 11

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
   15 Civ. 3538 (VSB), 2023 WL 3749996 (S.D.N.Y. June 1, 2023) ................................................. 14, 21

*Tavera v. 18 Greenwich Ave., LLC, et al.*,
   1:19 Civ. 8258 (S.D.N.Y. Aug. 3, 2020) .......................................................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................................................... 12

*Wal- Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. (2011) ................................................................................................................................. 10

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ........................................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 23(a)(2) ............................................................................................................................ 10

Fed. R. Civ. P. 23(a)(3) ............................................................................................................................ 11

Fed. R. Civ. P. 23(b)(3) ...................................................................................................................... 10, 13

Rule 23 ...................................................................................................................................................... 15

## PRELIMINARY STATEMENT

On September 20, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval and authorized the issuance of notice of this settlement to 1,911 Class Members, who worked as Home Health Aides ("HHAs"), regarding claims against Defendant Avondale Care Group, LLC ("Defendant" or "Avondale") under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). Dkt. 296. The Court found that it would likely be able to approve the settlement and found that the settlement was "fair, reasonable and adequate; avoids anticipated burdens, expenses and litigation risks; was entered into in good faith and is the product of arm's length bargaining, free of collusion; and in the best interest of Named Plaintiffs and the putative class." *Id.* Now that the Notice period has closed, with a 38% participation rate, Class Members' reaction to the notice confirms that the Court's preliminary approval order was warranted. Indeed, no Class Member has objected to the settlement or requested to be excluded.

Upon entry of the Final Approval Order, the Settlement and Release of Claims Agreement (Dkt. 292-1) ("Agreement"), which provides a $5,035,000.00 Settlement Fund, will resolve all claims in this Class and Collective Action Complaint against Avondale, including failure to pay overtime for all hours worked during 24-hour live-in shifts, failure to pay spread-of-hour pay, and failure to provide accurate wage statements.[1] The Settlement Fund will pay Class Members who are Participating Plaintiffs their Settlement Shares, the cost of settlement administration ($16,606), a $15,000 Service Award for each of three Named Plaintiffs, Class Counsel's attorneys' fees (one-third of $5,000,000), and $30,495.21 for Class Counsel's expenses.[2] After deducting these costs, the average Settlement Payment is estimated to be $4,400  The largest Settlement amount for an

---

[1] Capitalized terms used herein refer to the same terms contained in the Settlement and Release of Claims Agreement (Dkt. 292-1).

[2] Class Counsel have separately submitted a Motion requesting the Court to award attorneys' fees, reimbursement of litigation expenses, and grant a service award to the Named Plaintiffs.

individual class member is more than $37,000, and over 110 Class Members will receive more than $10,000. Especially considering the risk of not recovering any money, these are meaningful payments to the Class Members, many of whom work and live paycheck to paycheck, while caring for the elderly, sick and disabled. The Settlement Shares were determined, and the Settlement Payments will be distributed, on a pro rata basis, based on the number of live-in shifts each Participating Plaintiff worked, as reflected in Avondale's payroll data.

In exchange for these payments, upon entry of the Final Approval Order, Class Members will release and waive all wage and hour claims alleged or that could have been alleged in this Complaint related to their employment and/or engagement with Avondale. Settlement Agreement ¶ 24. Only Participating Plaintiffs (including those who have already opted-in and those Class Members who filed a Claim Form and Consent to Sue) will release their FLSA claims. *Id.* Class Members who did not file a Claim Form and Consent to Sue, and did not opt-out of the Settlement, release only their NYLL claims, but not their FLSA claims. *Id.*

For the reasons that follow, Class Counsel respectfully move the Court to grant final approval of the settlement. In support of this motion, Class Counsel submits, along with this memorandum, Declarations from Class Counsel (hereafter "Yau Dec." and "Bohrer Dec."), the Declaration of Richard Simmons of the Claims Administrator, Analytics Consulting LLC ("Simmons Dec."), and a proposed Final Approval Order granting final approval of the settlement (attached as Exhibit 1).[3]

---

[3] For the sake of completeness, Sections 1 through 5 of the Factual and Procedural Background and Sections 1 through 5 of the Summary of Settlement Terms have been largely repeated here from Plaintiffs' Motion for Preliminary Approval of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice of Settlement. Dkt. 291.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.        INITIATING THE PROCEEDING

Keila Severino, on behalf of herself and the FLSA collective and NYLL class, filed her complaint on December 15, 2021. After Avondale requested the Court's permission to move to dismiss the FLSA claims, the Court permitted Plaintiff to file a First Amended Complaint. To address issues raised by Avondale, the Amended Complaint clarified the willful FLSA violation and added two additional Named Plaintiffs — Khady Gueye and Delsa Jimenez — whose claims were within the two-year statute of limitations under the FLSA. Yau Dec. ¶ 8. At the time Avondale answered the Amended Complaint, on June 10, 2022, over 100 HHAs had opted into this lawsuit. *Id.* at ¶ 9.

### II.       PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND DEFENDANT'S OPPOSITION

Plaintiffs moved for conditional certification in the summer of 2022. Dkts. 106 – 131. Shortly thereafter, Avondale opposed the motion and informed Plaintiffs of its intent to move to compel the Named Plaintiffs to individual arbitration. Dkts. 139-141. Plaintiffs responded that they would oppose such a motion on the basis that Avondale had waived its right to arbitration. Dkts. 144, 146 – 147. The day after Plaintiffs filed their reply in support of their motion for conditional certification, the Court ordered the Parties to submit additional briefing on the arbitration and waiver issues. Dkts. 148; 151; 155. The Court subsequently granted Plaintiffs' motion for conditional certification. Dkt. 156.

### III.      UNSUCCESSFUL MEDIATION AND DEFENDANT'S ATTEMPT TO STAY THE PROCEEDING

Before notice was issued, in early November 2022, the Parties agreed to mediate this dispute. Dkt. 157. Pending mediation, all proceedings, including Avondale's to-be-filed motion to compel arbitration and Plaintiffs' dissemination of notice to putative collective members, were

held in abeyance. Dkt. 158. The Court ordered the Parties to complete mediation by February 5,

2023. *Id*. The Parties participated in an unsuccessful mediation with mediator Stephen Sonnenberg,

Esq. Shortly after negotiations broke down, Avondale filed an emergency motion for a temporary

restraining order and preliminary injunction to restrain Plaintiffs from distributing notice to the

collective. Dkt. 167. Avondale also moved to compel arbitration, stay all proceedings, and for an

order mooting the conditional certification of the FLSA collective. *Id*. Judge Schofield denied

Avondale's Order to Show Cause. Dkt. 170. After reviewing the Parties' positions, she additionally

denied Avondale's Motion to Compel Arbitration without prejudice until the opt-in period was

over and opt-in discovery was completed. Dkts. 177; 180. The Parties then continued with

discovery, and Plaintiffs disseminated notice to nearly 2,000 HHAs. Dkt. 158.

## IV.      OVERVIEW OF DISCOVERY

The Parties produced a large amount of discovery. Avondale produced over 6,000 pages

of bates stamped documents in pdf and excel. This included policy and procedure documents (such

as the employee handbook), payroll data, caregiver notes, an organizational chart, personnel files,

plans of care, and documents from prior litigation. Plaintiffs also had the benefit of documents that

were filed on the public docket in other cases against Avondale. Plaintiffs also produced a

significant amount of discovery. This included interrogatory responses, and hundreds of pages of

documents, including paystubs, text messages, Avondale policy and procedure documents, and

various personnel documents.

Discovery was at times contentious. Because Avondale declined to produce certain

documents for all Class Members, Plaintiffs moved to compel production. Dkt. 210 and 224.

Although Avondale objected to part of the Court's Order, Judge Schofield denied Avondale's

objections. Dkts. 238 and 253. Plaintiffs also opposed Avondale's motion to compel discovery,

including (i) that Plaintiffs be ordered to produce documents and information from the 300 plus

Opt-In Plaintiffs (commensurate with the discovery the Court ordered Avondale to produce) or, in the alternative, documents from a 5% sample of the Opt-In Plaintiffs and certain documents from all of Opt-In Plaintiffs; (ii) to compel Named Plaintiff to make herself available for her deposition;[4] (iii) for leave to take more than 10 depositions; and (iv) for the Court to set a scheduling order for Plaintiffs' discovery. Dkt. 246. On May 16, 2023, the Court granted Avondale's motion in part, requiring Plaintiffs to produce certain documents and information, allowed Avondale to take 34 depositions, permitted a Named Plaintiff to sit for a remote deposition after she produced documents, and set a discovery production schedule for Plaintiffs. Plaintiffs complied with the Court's orders. Dkt. 259.

Further, Plaintiffs filed a motion requesting that the Court exercise supplemental jurisdiction over Plaintiffs' NYLL claims should Plaintiffs not seek the Rule 23 class certification, which Avondale opposed. Dkts. 240, 241, and 266.

## V.        THE SETTLEMENT PROCESS

To facilitate settlement discussions, Avondale produced wage and hour data for all Class Members, including Opt-In Plaintiffs. Plaintiffs' Counsel created a damage model and shared it with Avondale. Although the mediation was unsuccessful, the parties continued their discussion for another week. However, those discussions also broke down. Nevertheless, at a later date the parties continued to negotiate and reached an amicable resolution.

On June 30, 2023, the Parties executed an enforceable Term Sheet containing the material monetary and non-monetary terms. On September 12, 2023, the Parties executed the Settlement Agreement.

---

[4] A Named Plaintiff scheduled a trip Senegal to spend time with family.

## VI.        MOTION FOR PRELIMINARY APPROVAL

On September 15, 2023, Plaintiffs moved for preliminary approval of this settlement. Dkt. 290. Five days later, the Court preliminarily approved the settlement, provisionally certified the settlement class, appointed Plaintiffs' Counsel as Class Counsel, and approved the proposed notice of settlement. The Court authorized Class Counsel to move for an award of attorneys' fees up to one-third of Settlement Fund, Dkt. 296, which was also agreed to in the Settlement Agreement. Settlement Agreement ("SA"), Dkt. 292-1, ¶ 18. However, Class Counsel will seek fees of slightly less than one-third of the Settlement Fund, which is more than $761,000 below their current lodestar. Yau Dec. ¶ 67. Further, the Settlement Agreement permitted Plaintiffs' Counsel to request payment of their costs, and Service Awards for Named Plaintiffs, which was also authorized by the Court. *Id.* at ¶¶ 31 – 32; Dkt. 296. The Court also gave the parties until January 17, 2024 to move for final approval of the settlement.

### SUMMARY OF SETTLEMENT TERMS

#### *The Settlement Class*

The Court provisionally approved the following definition of a Settlement Class:

All Avondale employees who worked a 24-hour live-in shift from December 15, 2015 through the date that the motion seeking preliminary approval of the settlement is filed ("Preliminary Motion Date"). Class Members do not include any former employees, who have settled any litigations or arbitrations against Avondale or have pending individual litigation against Avondale.

The class includes 1,911 Class Members. Yau Dec. ¶ 7.

#### *Scope of the Settlement and Release*

The Settlement Agreement, if approved, resolves the claims of the Named Plaintiffs and all Opt-In Plaintiffs, and the NYLL claims of all Class Members who did not opt-out, and the FLSA and NYLL claims for all Class Members who filed a consent to sue or claim form. Yau Dec. ¶ 26. Each Class Member will release and waive their NYLL claims that were alleged or that could

have been alleged in their Complaint related to their employment and/or engagement with Avondale. SA ¶ 24. The release language has been negotiated by the Parties. *Id.*

Of note, only Participating Plaintiffs (including those who have already opted-in and those Class Members who filed a Claim Form and Consent to Sue) will release their FLSA and NYLL claims. *Id.* Class Members who do not file a Claim Form and Consent to Sue, and do not opt-out of the Settlement, release only their NYLL claims, but not their FLSA claims. *Id.* Under the terms of the Settlement Agreement, Class Members were notified of their rights and could have opted-out of the class and preserved their NYLL, but none chose to do so.

***Summary of the Terms of the Settlement Agreement***

The Settlement Agreement creates a Settlement Fund of $5,035,000.00 as consideration for Plaintiffs' release of claims. SA ¶ 22.

After costs, Service Awards, administrative costs, and attorneys' fees are deducted from the Settlement Fund, the remaining amount ("Net Settlement Amount") will be distributed to the Participating Plaintiffs based on an allocation formula, as described below and attached as Exhibit E to the Settlement Agreement. Dkt. 292-1, at ECF pages 61-62; Yau Dec. ¶ 23. Participating Plaintiffs' individual recoveries are referred to as "Settlement Shares."

There is no reversion of funds to Avondale. SA ¶ 17(b). Participating Plaintiffs who do not cash their checks within the applicable time period will have their funds sent to the Unclaimed Funds Department of the New York State Comptroller's Office, and thus retain the opportunity to collect their settlement payment at a later time. SA ¶ 15(b).

***Allocation Formula***

The Net Settlement Amount will be distributed to the 738 Participating Plaintiffs. The funds will be distributed on a pro rata basis, based on the number of 24-hour live-in shifts each Participating Plaintiff worked, as reflected in Avondale's payroll data. The allocation formula is

further defined in the Settlement Agreement. SA, Ex. E. Under this formula, the average settlement payment is estimated to be $4,439.  The largest Settlement Check is more than $37,000, and approximately 110 Participating Plaintiffs will receive more than $10,000. This is more than the amount that was provided in each Participating Plaintiffs' Notice. Further, each Participating Plaintiff will receive a minimum payment of $50.

### *Attorneys' Fees, Litigation Costs, and Service Awards*

Pursuant to FRCP Rule 23(h), Rule 54(d)(2), and under the FLSA, Class Counsel have separately filed a motion for approval of attorneys' fees, reimbursement of litigation expenses, and service awards. Class Members have not opposed the Settlement, including the award of attorneys' fees, litigation expenses, and service awards. Simmons Dec. ¶¶ 18-19.

### *Claims Administrator*

The Court appointed Analytics LLC as the Claims Administrator (or "Administrator"). Simmons Dec. ¶ 3. Analytics issued the Notices on October 18, 2023. Simmons Dec. ¶ 9. Analytics sent notices to 1,908 Class Members.[5] All addresses were updated using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"), certified via the Coding Accuracy Support System ("CASS"), and verified through Delivery Point Validation ("DPV"). Simmons Dec. ¶ 7. Of the notices mailed to 1,908 Class Members, 133 were returned undeliverable. Simmons Dec. ¶ 11. Analytics was able to locate updated addresses for and remail notices to 88 Class Members. *Id.* Class Notice was successfully delivered to 97.6% of the Settlement Class (1,863 out of 1,908). *Id.* Of the 1,911 class members, 738 Class Members, or over 38% of the class, chose to participate in the settlement. This includes the 543 Named and Opt-In Plaintiffs who filed a consent to sue form before the Settlement Agreement was executed,

---

[5] The three Named Plaintiffs did not receive a copy of the Notice. Simmons Dec. ¶ 8.

and the 195 Class Members who returned a Consent to Sue and Claim Form. Simmons Dec. ¶¶ 10, 17. No Class Member objected, and no one opted-out of the settlement. Simmons Dec. ¶¶ 18, 19.

The Settlement Administrator complied with the CAFA Notice requirement on October 2, 2023. Simmons Dec. ¶ 5. There are no objections lodged by any CAFA notice recipient.

*Next Steps*

Assuming the Court enters the Final Approval Order, the Claims Administrator will mail the Settlement Checks to Participating Plaintiffs within 14 days of the Effective Date. The Effective Date of the settlement is either 30 days after the Court enters the Final Approval Order, or the after the resolution of any appeals. Participating Plaintiffs will have 180 days to cash their Settlement Checks. Any check that remains uncashed will be sent to the Unclaimed Funds Department of the New York State Comptroller's Office, thereby preserving any such Participating Plaintiff's right to claim their Settlement Payment.

## ARGUMENT

## I.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS WARRANTED

Before granting final approval of a class action settlement, the Court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor,* 521 U.S. 591, 520 (1997). The Court previously certified the Class for settlement purposes. Dkt. 296, ¶ 5. Nothing has changed in the interim which would call into question the propriety of that ruling. All of the criteria under Rule 23(a) and (b)(3) continue to be met. Accordingly, the Class certified in the Preliminary Approval Order should be granted final certification for purposes of effectuating the Settlement Agreement.

Out of an abundance of caution, Plaintiffs reiterate their arguments from the Preliminary Approval Motion for class certification. To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation. *Soler v. Fresh Direct, LLC*, 20 Civ. 3431 (AT), 2023 WL 2492977, at *5 (S.D.N.Y. Mar. 14, 2023). In addition, Plaintiffs must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court can grant final certification of the classes for judgment.

### A.    Numerosity is Satisfied

Numerosity is easily met because there are 1,911 Class Members. "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68–69 (S.D.N.Y. 2018) (citing cases).

### B.    Commonality is Satisfied

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires a plaintiff to "demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 338, 349-50 (2011) (internal quotations omitted). Here, Named Plaintiffs and the Class share common questions of law and fact, arising from the same policies and practices all Plaintiffs were subject to, including whether Avondale failed to pay Plaintiffs overtime wages and for hours worked during meal and sleep periods in a 24-hour shift; whether it violated NYLL by failing to pay the legally-mandated spread of hours pay for work in excess of 10 hours a day, and failing to provide Plaintiffs with accurate wage statements. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 700 (S.D.N.Y. 2019) (finding Rule 23(a)(2) met where plaintiffs alleged the "same economic injury stemming from the same…violation"); *Soler*, 2023 WL 2492977 at *5 (finding

commonality likely met where class members all worked for the same employer and were subject to the same policies and practices). Thus, commonality is satisfied.

### C.    Typicality is Satisfied

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims satisfy the typicality requirement because their claims all "arise from the same factual and legal circumstances that form the bases of the class members' claims." *Dorn v. Eddington Sec., Inc.*, 8 Civ. 10271, 2011 WL 382200, at *2 (S.D.N.Y. Jan. 21, 2011) (finding Rule 23(a)(3) satisfied where plaintiff's claims for overtime and spread of hours pay arise from the same factual and legal circumstances that form the bases of the of the class members' claims). Here, the Named Plaintiffs and the Class Members contend that Avondale failed to pay them overtime wages for hours worked more than 40 per week and failed to pay them for all hours worked during 24-hour shifts. Thus, typicality is satisfied.

### D.    Adequacy is Satisfied

Determination of adequacy of representation "typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Soler*, 2023 WL 2492977 at *3 (citations omitted). Here, the adequacy factor is satisfied. Class Counsel are experienced wage and hour litigators and have been litigating this case for over two years to bring it to a successful resolution. Yau Dec. ¶ 88; Bohrer Dec. ¶¶ 3-5 (Dkt. 293); Brady Dec. ¶¶ 3-5 (Dkt. 294). Class Counsel has demonstrated they are qualified and able to conduct the litigation. The case meets Rule 23(e)(2)(A)'s adequacy of representation prong and thus favors approval.

### E.        Predominance is Satisfied

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007); *Dorn*, 2011 WL 382200 at *3 (finding predominance requirement met when class members assert "common factual allegations and common legal theory"). This inquiry asks "whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all Class Members are unified by common factual allegations that they were subject to the same wage and hour policies and that Avondale allegedly failed to properly compensate them for all hours worked, pay them overtime, keep accurate time records, or address Plaintiffs' alleged complaints about work during meal and sleep periods. These factual questions all flow into a common legal question, i.e., whether Avondale failed to pay HHAs for all work performed during 24-hour live-in shifts. The class is thus unified by a common legal theory – that Avondale's wage and hour policies violated the FLSA and NYLL. *See*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question for class treatment"). Accordingly, predominance is satisfied.

### F.        Superiority is Satisfied

The second part of the Rule 23(b)(3) analysis is an examination of whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Class adjudication here is superior to individual adjudication in this case because the class size is large, individual claims are relatively small, and few claims have been brought separately, though that could occur if no class settlement occurred. Class adjudication here "will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Dorn*, 2011 WL 382200 at *3. The standard set out in Rule 23(a) and 23(b)(3) is satisfied.

## II.        THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

As stated in the Advisory Committee Notes to the 2018 amendments to Rule 23, Subdivision (e)(2), the central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. In this review, the Court assesses the settlement for procedural fairness and substantive fairness. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.")

Within this framework, approval of a settlement is "within the Court's broad discretion."

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 423 (S.D.N.Y. 2001).  "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citation and quotation marks omitted).  After applying these standards, the Court should grant final approval of this settlement.

### A.     The Settlement Satisfies Procedural Fairness

#### 1.     *The Settlement Was Negotiated at Arm's Length*

Rule 23(e)(2)(B) requires the Court to assess the settlement for procedural fairness. *In re GSE Bonds.*, 414 F. Supp. 3d at 693. A presumption of fairness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery. *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 15 Civ. 3538 (VSB), 2023 WL 3749996 at *3 (S.D.N.Y. June 1, 2023).

This Settlement is the result of an in-depth investigation into the strengths and weaknesses of the case conducted by Class Counsel. Class Counsel have devoted substantial effort in litigating this case, which included filing and opposing motions, analyzing Avondale's documents, speaking with numerous clients, and preparing to take depositions and participating in discovery, as discussed above. The Parties reached a settlement only after creating a damage model using Avondale's wage and hour records, and engaging in approximately six months of intense negotiations, including with a mediator. Further, Class Counsel retained a consultant to assist in evaluating Avondale's ability to withstand and pay a larger settlement or judgment. This demonstrates the Settlement resulted from good faith and arm's-length negotiations. Yau Dec. ¶ 42. *Flores v. CGI Inc.*, 22 Civ. 350 (KHP), 2022 WL 13804077, at *6 (S.D.N.Y. Oct. 21, 2022) ("the Court finds that Class Counsel properly and thoroughly investigated the claim and negotiated

a reasonable settlement for the class, raising a presumption that the settlement achieved meets the requirements of due process.").

### 2. Plaintiffs and Class Counsel Have Provided Excellent Representation to the Class

Courts also consider "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"). This analysis "'typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting *Cordes*, 502 F.3d at 99).

Here, the adequacy factor is satisfied. The Named Plaintiffs are adequate representatives because, even though they recovered substantially less than they would have potentially recovered on an individual basis, they aligned their interests with other HHAs who suffered the same wage violations. Class Counsel are experienced wage and hour litigators and have been litigating this case for over two years to bring it to a successful resolution. Yau Dec. ¶ 88; Bohrer Dec. ¶¶ 3-5 (Dkt. 293); Brady Dec. ¶¶ 3-5 (Dkt. 294). Class Counsel have demonstrated they are highly qualified and able to conduct the litigation. Further, Class Counsel have successfully litigated similar cases in the past on behalf of Home Health Aides and had the benefit of that experience to evaluate the risks of the case. Thus, this factor favors approval, and the process of reaching the settlement was procedurally fair.

### 3. The Notice and Claims Process Satisfied Rule 23(c) and Due Process

The Court previously approved the form and content of the Notices of Settlement to be distributed to the Class and the opt-ins, and found that the notice plan set forth in the Settlement Agreement was "determined to be the best practicable means of providing notice under the

circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Final Approval Hearing to all Class Members in full compliance with the notice requirements of Federal Rule of Civil Procedure 23, due process, the Constitution of the United States, the laws of the State of New York and all other applicable laws." Dkt. 296, ¶ 9. The declaration from Analytics attests to the fact that the Settlement Administrator carried out the Notice procedures specified in the Settlement Agreement in all respects. Simmons Dec. ¶¶ 5 - 16. No Class Member has questioned or objected to the adequacy of the Notice. Further, no Class Member opted-out. Simmons Dec. ¶¶ 18-19. Accordingly, the Court should find that the form and method for notifying the Class Members satisfied the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances. *See, Tavera v. 18 Greenwich Ave., LLC, et al.,* 1:19 Civ. 8258, Dkt. 64, ¶ 8 (S.D.N.Y Aug. 3, 2020) (finding the NYLL Class Action notice and claims process was fair and adequate and comported with due process).

### 4.    *The Settlement is Substantively Fair*

In evaluating a class action settlement for substantive fairness, courts in the Second Circuit generally consider the nine factors set forth in *Grinnell*, 495 F.2d at 463. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* All the *Grinnell* factors weigh in favor of final approval of the Settlement.

### a. *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation

The Settlement avoids significant costs, risks, and delay, ensuring timely relief for class members. The Parties have already undertaken considerable time and expense in evaluating the claims and defenses in this case. This case is complex, with 1,911 Class Members. Further assessment of liability and damages will require significantly more factual discovery, which would likely result in protracted litigation. Avondale was prepared to take 34 depositions, requiring the Plaintiffs to defend them, and Plaintiffs were prepared to move forward with depositions of fact witnesses, the owners of the company, and a 30(b)(6) witness. If litigation were to continue, Plaintiffs would file for class certification and if granted, Avondale would move to de-certify the class. Avondale would also likely move to decertify the FLSA collective. Avondale would renew its motion to compel Plaintiffs to arbitrate their claims. The Parties would also likely file dueling summary judgment motions, and both Parties would expend substantial time and resources preparing and introducing evidence at trial on complex factual and legal issues. The Court would have to devote substantial resources to adjudicate the Parties' disputes. Any judgment would likely be appealed, thereby extending the duration of the litigation.

Moreover, Plaintiffs have already undertaken considerable time and expense in evaluating the amount Avondale can pay based on publicly available information and proprietary information Avondale shared. Based on Avondale's declining revenue and existing assets, the amount of Settlement Fund is about the maximum that Avondale can afford to pay. Yau Dec. ¶ 51.

### b. *Grinnell* Factor 2: Reaction of the Class

Here, the response to the settlement has been overwhelmingly positive. No Class Member opted-out of the settlement, and no Class Member objected to the settlement. *Flores v. CGI Inc.*, 22 Civ. 350 (KHP), 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (no class members

objected, and only two opted-out; "This is a major indication of fairness."); *D'Angelo v. Hunter Bus. Sch., Inc.*, 21 Civ. 03334 (JMW), 2023 WL 4838156, at *6 (E.D.N.Y. July 28, 2023) (noting that one class member objection and no opt-outs favor final approval). Further, over 38% of the Class is participating in the settlement because they either opted-in during the FLSA collective action notice process (and did not opt out) or they returned a claim form. *Mendez v. MCSS Rest. Corp.*, 16 Civ. 2746 (RLM), 2022 WL 3704591, at *7 (E.D.N.Y. Aug. 26, 2022) (citing cases and noting that a return rate of 28% favored a "strong positive reaction by the Class"). Class Counsel spoke with many Class Members, answered their questions about the claims, and the Class Members were pleased with the settlement. Yau Dec. ¶ 35. Thus, the factor favors final approval.

### c. *Grinnell* Factor 3: Stage of the Proceedings

For this factor, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (citation omitted). Here, the parties have conducted sufficient fact investigation and discovery to recommend settlement. Moreover, Class Counsel had the information they needed to fully evaluate the litigation risks presented and the value of the case, for each individual class member as well as for the class as a whole. Class Counsel has litigated two other cases on behalf of HHAs who worked 24-hour live-in shifts for other employers and had similar claims to those brought here. Yau Dec. ¶ 83. Class Counsel thus understood what information was necessary to value the claims and compelled it. They also understood the inherent risks this case presented. Counsel believes the settlement represents a fair and reasonable sum given these risks. Accordingly, this factor weighs in favor of final approval.

### d. *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages

In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re*

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, (internal quotations omitted). While Plaintiffs believe that their claims are meritorious and the class-wide damages provable, Plaintiffs also understand that their ultimate recovery is subject to considerable risk and face serious liability — and damages — related questions, including proving Plaintiffs did not receive part or all of their sleep and meal breaks and, if successful, proving the related damages. Avondale asserted numerous affirmative defenses, including: (1) there were comprehensive policies and procedures in place, including a phone application or call in system to input codes for meal and sleep periods; (2) Named Plaintiffs and Class Members did in fact input codes for meal and sleep periods, affirmatively attesting that they received sleep and meal periods; (3) Named Plaintiffs and Class Members failed to follow Avondale's policies and procedures for reporting missed breaks, preventing Avondale from receiving notice of missed breaks and precluding liability; (4) it is not credible for Named Plaintiffs and Class Members to work consecutive 24-hour shifts without sleep and meal breaks; (5) the Department of Labor permits payment of 13 hours for 24-hour shifts; and (6) Avondale and the HHA industry have been the target of overzealous litigation that is ungrounded. Further, Avondale would argue against class certification, claiming that individualized questions would preclude certification, that a class action would not be a superior method to resolve Plaintiffs' claims, and a class trial would not be manageable. Yau Dec. ¶ 46. Any of these defenses, if proven, could have resulted in lower, or no recovery. In this case, "[s]ettlement eliminates the risk, expense, and delay inherent in the litigation process." *Beckman,* 293 F.R.D. at 476. The risks of establishing liability and damages factors weigh heavily in favor of final approval.

     **e.**   ***Grinnell*** **Factor 6: Risks of Maintaining the Class Action Through the Trial**

The risk of certifying the class and maintaining class status through trial also exists. Class certification would involve intense, exhaustive briefing by both parties. In arguing against class certification, Avondale would likely argue that a plethora of individualized questions would preclude class certification, a class action would not be a superior method to resolve Plaintiffs' claims, and a class trial would not be manageable. Moreover, Avondale expressed its intention to compel individual arbitration. If so, it was likely that, while some Plaintiffs would have remained in the case, most Plaintiffs would have been compelled to litigate their claims individually in arbitration. Thus, the Parties faced the prospect of litigating in both federal court and arbitration. Settlement eliminates the risk, expense, and delay that Plaintiffs could have faced. This factor favors final approval.

     **f.**   ***Grinnell*** **Factor 7: Ability of Defendant to Withstand a Greater Judgment**

Avondale is unlikely able to withstand a greater judgment. Class Counsel and a consultant that Plaintiffs hired have conducted an analysis of Avondale's finances using publicly available financial data and proprietary and confidential information Defendant produced, which indicated Avondale has experienced declining revenue and decreasing assets. This point is reinforced by Avondale's representations that a larger settlement and continued litigation could result in potential bankruptcy; assuming Plaintiffs' damages assessment was correct, with which Avondale disagrees. The Settlement provides Class Members with the certainty of monetary recovery that they may not have even if they succeed at trial. Thus, this factor favors final approval.

### g. ***Grinnell*** **Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation**

The settlement amount is fair and reasonable given the attendant risks of litigation. As discussed above, if Avondale prevailed on one or more of its numerous affirmative defenses, some or all of Plaintiffs claims could have been dismissed and Plaintiffs recoveries diminished or defeated. Plaintiffs face the likelihood they may not be able to recover any award because of Defendant's inability to pay a greater sum. *See supra.* Plaintiffs' Counsel engaged in a rigorous and highly complex determination of the fair settlement value of this litigation prior to agreeing to the Settlement. Yau Dec. ¶ 49. Class Counsel only recommended and agreed to the Settlement after an exhaustive analysis of litigation risk for each claim, determining thereby the fair settlement value for the Class. This settlement passes this rigorous risk analysis.

### 5. *The Relief Provided to the Class is Adequate*

### A. **The Settlement Agreement Treats Class Members Equitably to One Another**

Rule 23(e)(2)(d) requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other." The Settlement provides Participating Plaintiffs *pro rata* Settlement Shares. The Settlement also provides that all class members who do not opt-out release their NYLL claims against Avondale that were raised or could have been raised in this action. SA Ex. E. Courts in this jurisdiction have found terms such as these sufficient to show the Settlement Class is treated equitably. *See, Sonterra Capital Master Fund Ltd.*, 2023 WL 3749996 at *4 (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019) ("pro rata distribution scheme is sufficiently equitable")). Thus, this factor is also satisfied.

**III.      THE RELEASE OF FLSA CLAIMS SHOULD BE APPROVED AS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE**

For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e), the Court can approve the FLSA release for class members who filed a consent to sue or claim form and did not opt out. *Flores v. CGI Inc.*, 22 Civ. 350 (KHP), 2022 WL 13804077, at *9 (S.D.N.Y. Oct. 21, 2022) (noting that the standard for a FLSA settlement approval is lower a Rule 23 approval. Thus "satisfaction of the *Grinnell* factor analysis" satisfies the FLSA settlement analysis.) Thus, the Court should find that there are significant *bona fide* disputes in this case, that the FSLA settlement was the result of contested litigation and arms-length negotiation, and that the settlement terms are fair and appropriate.

## CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that the Court grant their Motion for Final Approval of Class Settlement, instruct the parties and the Claims Administrator to implement the terms of the Settlement Agreement and enter the Proposed Final Approval Order.

Date: January 17, 2024

Respectfully Submitted,

*/s/Matt Dunn*
Matt Dunn, Esq.
Karen Kithan Yau, Esq.
Elisabeth Schiffbauer, Esq.
GETMAN, SWEENEY & DUNN PLLC
260 Fair Street
Kingston NY 12401
Tel: (845) 255-9370
Fax: (845) 255-8649
Email: mdunn@getmansweeny.com
Email: kyau@getmansweeny.com
Email: eschiffbauer@getmansweeny.com

Philip Bohrer, Esq. (admitted pro hac vice)
Scott E. Brady, Esq. (admitted pro hac vice)
BOHRER BRADY LLC
8712 Jefferson Highway, Ste. B
Baton Rouge, LA 70809
Tel: (225) 925-5297
Fax: (225) 231-7000
E-mail: Phil@bohrerbrady.com
E-mail: Scott@bohrerbrady.com

*Class Counsel for Plaintiffs*